UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Marilyn Hawkins,

Plaintiffs

v.

Victoria & Co.,

Defendant.

00 CIV 1664 DDA/FLN

**ORDER**

---

Neff Law Firm, by THERESA A. FREEMAN, for the plaintiff.

Jackson, Lewis, Schnitzler & Krupman, by THOMAS E. MARSHALL and NATALIE WYATT-BROWN, for defendant.

---

This matter came on for hearing before the Court on June 18, 2002 upon the defendant's motion for summary judgment. The plaintiff, Marilyn Hawkins ("Hawkins" or "the plaintiff"), is a forty-seven year old African-American woman who claims that her former employer, Victoria & Co. ("Victoria" or "the defendant"), discriminated against her based on her race, color and national origin (Count I), and based on her age (Count II). Hawkins further claims that Victoria retaliated against her for complaining about the discrimination (Count III). In addition, Hawkins alleges various common law claims, including breach of employment contract (Count IV), promissory and equitable estoppel (Count V), intentional infliction of emotional distress (Count VI), and negligence (Count VII). The Court will grant the defendant's motion on all Counts except Count I, which will be denied as it relates to Hawkins's Title VII Failure to Promote claim only.[1]

## I. BACKGROUND

Victoria manufactures and sells costume jewelry to department stores throughout the United States. Hawkins was hired by Victoria in 1984 as a retail marketing coordinator.

---

[1] At oral argument, the parties agreed to dismiss all defendants, except Victoria & Co., without prejudice.

FILED AUG 1 2 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Hawkins's responsibilities included sales tracking, display work, ordering jewelry, and customer relations. She also was occasionally responsible for training new merchandisers. From 1984 to 1994, Hawkins worked in an office at the Hyatt Market Minneapolis. From 1994 until 2001, when she resigned, Hawkins worked out of her Minneapolis home. Hawkins received good reviews while at Victoria and was successful at her job.

However, Hawkins is not without complaints about her tenure at Victoria, chief of which is that she was not promoted.[2] The list of positions for which Hawkins believes she was wrongly passed-over and/or ignored begins in the early 1990's. The Court will detail the more recent positions, which include:

1. 1999 Dayton's -- In May 1999, Hawkins contacted Madeline Vera about an open sales position for the Dayton's account. Vera and Hawkins discussed the position over the phone. Vera told Hawkins that the position involved traveling to Rhode Island, and Hawkins told Vera that she was willing to travel.[3] Vera told Hawkins that she would get back to her, but she never did. Interviews were conducted for the position, and eventually it was filled by a Caucasian woman.

2. 2000 Herberger's – In January 2000, Victoria advertised in a local newspaper for an account executive representative position for Herberger's in Minnesota. Hawkins saw the ad in the paper and expressed her interest in the position to several Victoria executives. In February 2000, interviews were conducted, but Hawkins was not among those interviewed. Shortly thereafter, Carson's acquired Herberger's, and Victoria did not ultimately fill the position.

3. 2000 J.C. Penney – In August 2000, a J.C. Penney account executive was promoted, creating an open position. Victoria assigned the J.C. Penney account to an existing account executive, Rebecca Pies ("Pies"), in addition to her regular duties, rather than hiring for the

---

[2] Victoria did not have a policy of posting job openings internally, and instead encouraged employees to stand out based on performance and initiative. Hawkins claims that Victoria repeatedly either failed to notify her about open positions, ignored her request for information about promotions, or was not given jobs to which she did apply.

[3] The parties dispute whether Hawkins was willing to travel, and Hawkins's own testimony is contradictory regarding this issue. For example, in her Brief, she repeatedly asserts that she was willing to travel. However, in her deposition, she states that she did tell someone at Victoria that she did not want to travel long distances because her sister was ill. (Hawkins Dep. at 103-104). For purposes of this motion, the Court will assume that she was, in fact, willing to travel.

position. Pies is Caucasian.

4. Two 2000 Regional Manager Positions -- Victoria promoted Alex Paredes ("Paredes") to a Regional Merchandising Manager position located in Los Angeles, California. Shortly thereafter, Marilyn Hartman ("Hartman") was promoted to a Regional Merchandising Manager position in the Midwest. Hawkins was not notified about or interviewed for either of the Merchandising Manager openings. Paredes and Hartman are Caucasian.

Hawkins also alleges that Victoria created a hostile work environment. She sets forth several incidents in support of her claim. At a sales meeting in 1989 or 1990, John Kurilla ("Kurilla"), one of Hawkins's supervisors, overheard John Benison ("Benison"), Vice-President of Sales at Victoria, ask "how is the little Nigger doing in Minneapolis?" Kurilla told Hawkins about the comment in 1990.[4] Kurilla and Benison left the company shortly thereafter. Kurilla repeated the story to Hawkins several times in conversations from the early 1990's through 2000. Hawkins complains of several other occurrences. In 1994, while sharing a taxi with a co-worker, the co-worker stated that she would rather have an American cab driver because "these people don't know how to get around." In 1996-1997, J.C. Penney and Victoria marketed a line of jewelry to "larger and ethnic" clientele and did not halt the campaign after Hawkins complained. In general, Hawkins often felt left out of after hour company social events. Hawkins filed a charge of discrimination with the EEOC on May 26, 2000. She resigned from her employment at Victoria in June 2001 and then filed the instant lawsuit.

## II. DISCUSSION

### A. Summary Judgment Standard

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or are based on undisputed facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. United

[4] There is some dispute regarding whether Kurilla told Hawkins about the comment in 1990 or 1991 (before or after he left the company). The Court will assume he told her in 1990 for purposes of this motion.

States, 817 F.2d 1328, 1331 (8th Cir. 1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

The test for whether there is a genuine issue of material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. Liberty Lobby, 477 U.S. at 252; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). Second, any dispute of material fact must be "genuine". A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Liberty Lobby, 477 U.S. at 252. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of its claim. Celotex, 477 U.S. at 324.

**B. Discrimination Claims**

Discrimination can be proved by either direct or circumstantial evidence. Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir. 1991); see Swierkiewicz v. Sorema, 122 S.Ct. 992 (2002). In the absence of direct evidence, discrimination claims are analyzed under the three-step analysis articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under the shifting burdens framework, the plaintiff has the burden of establishing a prima facie case of discrimination. Christoper v. Adam's Mark Hotels, 137 F.3d 1069, 1071 (8th Cir. 1998). Once a prima facie case of discrimination is established, a rebuttable presumption "of discrimination in the plaintiff's favor [is raised], requiring the defendant to produce legitimate, non-discriminatory reasons for its actions." Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104, 1108 (8th Cir. 1994). If the defendant puts forth such a reason, the plaintiff must then present sufficient evidence to (1) raise a question of fact as to whether defendant's proffered reason was pretextual and (2) create a reasonable inference that discrimination was a determinative factor in the decision not to promote him. Dorsey v. Pinnacle Automation Co., 278 F.3d 830 (8th Cir. 2002).

"A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002) (quoting Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000)). However, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 2109 (citations omitted).

**1. Hostile Work Environment**

Hawkins claims that she was subjected to a hostile work environment due to her race, color and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §363.01 *et seq.*, by creating a hostile work environment.[5] Victoria argues that her claim is time-barred and, in the alternative, that Hawkins fails to establish a prima-facie case of hostile work environment. The Court will first consider whether Hawkins's claim is time-barred. Title VII requires that a plaintiff file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e)(1). The MHRA requires that the plaintiff file a claim with the Minnesota Department of Human Resources within one year of the alleged discriminatory action. Minn. Stat. §363.06, subd. 3. Hawkins filed her Charge of Discrimination on May 26, 2000. Thus, only events occurring after May 26, 1999 under the MHRA and after August 1, 1999 under Title VII may be considered by the Court.

Hawkins asserts that the "continuing violation doctrine" applies to any acts occurring prior to May 26, 1999 such that they can be considered as part of her hostile work

---

[5] She also claims she was subjected to discrimination based on her national origin, as she possesses some Native American ancestry, but the record is completely void of any evidence to support this claim.

environment claim. The United States Supreme Court recently held that "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2067 (2002). Hawkins has identified several events that occurred during the MHRA filing period. In the Spring of 1999, an employee told Hawkins she didn't "sound" Black on the phone. Another employee mentioned that Vera, a Victoria Executive, was raising bi-racial children, and that there was a secretary at Victoria who was also Black "like Hawkins". [6] Thus, the Court finds that "an act contributing to the claim" occurred within the filing period under the MHRA and that, therefore, "the entire time period of hostile environment may be considered . . . for the purposes of determining liability." Id. However, her claim is time-barred under Title VII because Hawkins has not identified any relevant events occurring after August 1, 1999.[7]

Discriminatory harassment is prohibited that is so severe or pervasive that it alters the conditions of employment and creates a hostile working environment. Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998); Mems v. City of St. Paul, 224 F.3d 735, 738 (8th Cir. 2000) (quoting Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir.1999)). To establish a prima facie case of discriminatory harassment, Hawkins must prove: 1) she is a member of a protected group; 2) she was subject to unwelcome harassment; 3) a causal nexus between the harassment and her membership in the protected group; 4) that the harassment affected a term, condition, or privilege of her employment; and 5) that Victoria knew or should have known of the harassment in question and failed to take prompt and effective remedial action. James v. W. Nat'l Mut. Ins. Co., No. CIV 99-1566 RHK/JMM, 2001 WL 436121, at *8 (D.

---

[6] Because Hawkins alleges that both comments were made in the Spring of 1999, the Court will assume, for purposes of this motion, that both occurred after May 26, 1999.

[7] Hawkins identifies Victoria's failure to promote her to either of the two 2000 Regional Merchandising Manager positions as part of her hostile work environment claim, such that her claim would not be time-barred under Title VII. Even if the Court found this to be true, her claim would fail on the merits, as discussed regarding the MHRA.

Minn. March 9, 2001) (Kyle, J.) (citations omitted).

To establish the fourth prong of the prima facie case, that the harassment affected a term, condition, or privilege of her employment, Hawkins must show that the harassment was "so severe or pervasive as to alter the conditions of [her] employment and create a hostile working environment." James, 2001 WL 436121, at *8 (citations omitted); Jacob-Mua v. Veneman, 289 F.3d 517 (8th Cir. 2002). Factors to consider in determining whether harassment is severe or pervasive enough to alter the conditions of employment include the frequency and severity of the discriminatory conduct, whether it is physically threatening or merely an offensive utterance, whether it unreasonably interferes with the employee's work performance, the physical proximity to the harasser, and the presence or absence of other people. Carter, 173 F.3d at 702. Sporadic or casual comments are unlikely to support a hostile environment claim. Id.

The Court finds that Hawkins has failed to establish the existence of harassment sufficiently severe or pervasive so as to affect the term, condition, or privilege of her employment. The most egregious occurrence about which Hawkins complains is the offensive comment made by John Benison, which was not made in Hawkins's presence. The fact that Kurilla repeated the story to Hawkins several times during the 1990's is not helpful to Hawkins's claim because Kurilla was no longer a Victoria employee. While the comment obviously was offensive, the Court cannot find that it was "physically threatening". Id.

The other acts to which Hawkins points as evidence of a hostile work environment simply do not rise to the level necessary to support her claim. The Court finds that Hawkins's allegations regarding "comments from co-workers about inter-racial marriages, and whether another employee 'talked black' . . . , were not so severe as to alter the conditions of [Hawkins's] employment." James, 2001 WL 436121, at *9. Neither are allegations that she was left out of social events, that some co-workers were rude to her or talked down to her on occasion, or that a co-worker made negative comments about a foreign cab driver. In addition, Hawkins spent most of her tenure at Victoria working out of her home, making it even less possible for the Court to find that her workplace was "permeated with

discriminatory intimidation, ridicule, and insult." Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 573 (8th Cir. 1997).

**2. Failure to Promote**

Hawkins claims that she was wrongly denied promotions due to her race in violation of Title VII and the MHRA. Victoria argues in response that many of the promotions identified by Hawkins are time-barred. Of the positions that are within the statue of limitations, Victoria claims that Hawkins either fails to establish a prima-facie case or cannot rebut Victoria's legitimate nondiscriminatory business reasons for its actions.

The Court will first consider whether Hawkins's claim is time-barred. Hawkins asserts that the "continuing violation doctrine" applies to any failure to promote claims that are time-barred under the MHRA or Title VII. This doctrine "does not apply to discrete acts of discrimination, such as failure to promote." James, 2001 WL 436121 at, *6 n.7 (quoting High v. Univ. of Minn., 236 F.3d 909 (8th Cir. 2000)); see Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2073. Accordingly, the Court finds that Hawkins's claims of failure to promote accruing prior to May 26, 1999 are time-barred under the MHRA. See Minn. Stat. §363.06, subd. 3. Similarly, Hawkins's claims of failure to promote accruing prior to August 1, 1999 are time-barred under Title VII. See 42 U.S.C. §2000e-5(e)(1). Thus, the timely positions about which Hawkins complains are the following: 1) May 1999 Dayton's position (MHRA only);[8] 2) 2000 Herberger's position; 3) 2000 J.C. Penney position; and 4) Two 2000 Regional Merchandising Manager positions.

However, her claim is further limited because several of these positions were either never filled or never existed. Regarding the 2000 Herberger's position, Victoria advertised for the position, but once Carson's subsequently acquired Herberger's, the need for a Herberger's representative was eliminated, and Victoria ceased its search for a Herberger's

---

[8] It is unclear from Hawkins's submissions whether this position accrued after May 26, 1999 such that it is actionable under the MHRA. For purposes of this motion, the Court will assume that it is not time-barred under the MHRA. Clearly it is time-barred by Title VII because it accrued sometime prior to August 1, 1999.

representative. Similarly, regarding the 2000 J.C. Penney position, Victoria handled a vacant position by reassigning duties to an existing account representative. As a result, under Title VII, Hawkins's claim is limited to the two 2000 Regional Merchandising Manager positions. Under the MHRA, her claim is limited to the May 1999 Dayton's position and the two 2000 Regional Merchandising Manager positions. See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1362 (2nd Cir. 1996); Holt. v. KMI-Continental, Inc., 95 F.3d 123, 129 (2nd Cir. 1996).

**a. Title VII**

Both parties analyze Hawkins's Title VII Failure to Promote claim under the McDonnell Douglas shifting burdens framework in their briefs. However, after the briefs were submitted and oral arguments were heard in this case, the Eighth Circuit Court of Appeals issued Lockridge v. Bd. of Tr. of the Univ. of Arkansas, No. 01-1472, 2002 WL 1358360 (8th Cir. June 24, 2002). Lockridge involves facts similar to those in this case, and it holds that failure "to establish a clear personnel procedure for promotions . . . is direct evidence of discrimination, and the McDonnell Douglas analysis is therefore inapplicable." Lockridge, 2002 WL 1358360, at *4 (citations omitted).

Judge Morris Sheppard Arnold noted in dissent that "this holding means that universities, and most other employers as well, may only infrequently be entitled to summary judgment in employment discrimination cases". Lockridge, 2002 WL 1358360, at *7 (Arnold, J. , dissenting). Furthermore, he noted that "any evidence of racial discrimination in this case is entirely circumstantial. Direct evidence is evidence of conduct or statements by persons involved in making the relevant decision directly manifesting a discriminatory attitude." Lockridge, 2002 WL 1358360, at *8 (Arnold, J., dissenting) (citations omitted). This Court finds it difficult to conclude that the failure to adopt a fully-defined internal promotion policy is, by itself, direct evidence of discrimination such as to avoid a McDonnell Douglas analysis.

Nonetheless, this Court is bound by the majority's holding in Lockridge. In this case, it is undisputed that Victoria did not have an internal promotion policy. Morever, Hawkins complains that it was difficult to obtain information about open positions at Victoria to which

she could apply. Thus, under Lockridge, the Court must find that an issue of fact exists as to whether race was a motivating factor in Victoria's failure to promote her, and summary judgment would be inappropriate as to Hawkins's Title VII Failure to Promote claim as it relates to the two 2000 Regional Manager positions.

**b. The Minnesota Human Rights Act**

Hawkins's MHRA Failure to Promote claim is subject to the McDonnell Douglas burden-shifting framework. Anderson v. Hunter, Keith, Marshall & Co., 417 N.W.2d 619, 624-27 (Minn. 1988); see Erickson v. Farmland Indus., Inc., 271 F.3d 718, 724 (8th Cir. 2001). To state a prima facie case of failure to promote under the MHRA, Hawkins must establish that: 1) she is a member of a protected group; 2) she was qualified and applied for a promotion to a position for which the employer was seeking applicants; 3) she was not promoted; and 4) similarly situated employees, not part of the protected group, were promoted instead. Austin v. Minnesota Mining and MFG. Co., 193 F.3d 992, 995 (8th Cir. 1999) (citations omitted). The Court finds that Hawkins has established a prima facie case as to the May 1999 Dayton's position and the two 2000 Regional Manager positions.

The burden shifts to Victoria to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for failing to promote Hawkins. Rose-Matson v. NME Hosp., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998). Regarding the 1999 Dayton's position, Victoria claims that the position required frequent travel to Rhode Island, and that Hawkins did not want to travel at that time. Victoria claims that the 2000 Midwest Regional Merchandising Manager position was filled by an existing employee, whose former position was being eliminated, because Victoria did not want to lose her. The 2000 Los Angeles Regional Merchandising Manager position, according to Victoria, required that the applicant live in the western United States. In addition, Victoria claims it had experienced some financial difficulties and did not want to pay to relocate someone for the position, so only people who lived in and around Los Angeles were considered. The Court finds that Victoria has articulated a legitimate, non-discriminatory reason as to why Hawkins was not promoted to these positions.

Accordingly, the burden shifts to Hawkins to present sufficient evidence to 1) raise a question of fact as to whether defendant's proffered reason was pretextual and 2) create a reasonable inference that discrimination was a determinative factor in the decision not to promote her. Dorsey, 278 F.3d at 830; see Reeves, 120 S.Ct. at 1209. Hawkins has presented evidence that Victoria's proffered reason for failing to promote her was pretextual because she claims that she was, in fact, willing to travel. However, as Hawkins's own testimony is contradictory regarding her willingness to travel, she has created only a weak fact issue. Reeves, 120 S.Ct. at 1209. In addition, the Court finds that there is no evidence to suggest that discrimination was a determinative factor in the decision not to promote her. Id. Accordingly, the Court will dismiss the entire MHRA portion of Hawkins's Failure to Promote claim in Count I, which includes the following: 1) 1999 Dayton's position; 2) 2000 Herberger's positions; 3) 2000 J.C. Penney position; and 4) Two 2000 Regional Merchandising Manager positions.

### 3. Age Discrimination

To establish a prima facie case of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§621-634, or the MHRA, Minn. Stat. §363.03, subd. 1, an employee must show: (1) she is a member of a protected age group; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was replaced by a younger person. Tadlock v. Powell, 291 F.3d 541 (8th Cir. 2002). An adverse employment action must involve "a diminution in title, salary or benefits". McKay v. Mineta, No. CIV 00-2624 ADM/AJB, 2002 WL 236689, at *3 (D. Minn. Feb.15, 2002) (Montgomery, J) (citations omitted).

It is undisputed that Hawkins is a member of a protected age group and was performing satisfactorily. However, she has failed to set forth evidence sufficient to establish that she suffered any adverse employment action. Hawkins alleges that "she was passed by for promotions that were given to younger employees who were under the age of 40." (Hawkins Brief at 23). Such vague charges do not involve a "diminution in title, salary or benefits". McKay, 2002 WL 236689, at *3. Cf. Darby v. Bratch, 287 F.3d 673 (8th Cir. 2002)

(finding an adverse employment action where the plaintiff was specifically told that she would not be promoted because of her use of sick leave, which was protected under the FMLA). In addition, Hawkins supplies scant evidence as to the ages of the persons who were hired or promoted instead of her. The Court finds, therefore, that Hawkins has failed to establish a prima facie case of age discrimination.

Even if she has established a prima facie case, however, Victoria has set forth legitimate, non-discriminatory reasons for its hiring decisions, as discussed above regarding Hawkins's Failure to Promote claim under the MHRA. Thus, the burden shifts to Hawkins to demonstrate that Victoria's proffered reasons are mere pretext and that intentional discrimination was the real reason Hawkins was not promoted. James, 2001 WL 436121, at *6-7. Hawkins alleges: "[M]y employer treated younger employees better than it did me. . . . I observed a consistent pattern by my former employer of hiring and/or promoting workers under forty to jobs desired by me." (Hawkins Aff. at 7). She has failed to present any evidence to support these allegations. Accordingly, the Court finds that Hawkins has not created a genuine issue of material fact that Victoria's proffered reasons for failing to promote Hawkins was a pretext for unlawful discrimination and Count II will be dismissed.

**4. Reprisal**[9]

To establish a prima facie case of a retaliation claim under Title VII and the MHRA, Hawkins must establish: (1) a protected activity, (2) subsequent adverse employment action, and (3) a causal relationship between the two. Ross v. Kansas City Power & Light Co., Nos. 01-1146/01-1244, 2002 WL1271613, at *6 (8th Cir. June 10, 2002) (citing Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 989 (8th Cir.1999) (Title VII)); Hubbard v. United Press Int'l., Inc., 330 N.W.2d 428, 444 (Minn. 1983) (MHRA). Hawkins engaged in protected activity when she filed a charge with the EEOC on May 26, 2000. The only allegedly adverse

---

[9] In her Brief, Hawkins titles her argument "Reprisal and Constructive Discharge". (Hawkins Brief at 26). However, constructive discharge is not otherwise addressed in her Brief, and it is not plead in her Amended Complaint. Accordingly, the Court will not address constructive discharge.

employment action occurring after that date is that Hawkins was not promoted to either the Midwest or the Los Angeles Regional Manager Position, both of which were filled in September 2000. The record is void of evidence indicating she suffered a change in salary, benefits, or responsibilities as a result of her 2000 EEOC complaint that would constitute an "adverse employment action." Jacob-Mua, 289 F.3d at 522.

Regarding causation, there is simply no evidence suggesting that the EEOC complaint and the failure to promote Hawkins to either Regional Manager position are related. Moreover, a "mere coincidence of timing" can rarely be sufficient to establish a submissible case of retaliatory discharge. Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (citations omitted) (two month interval between the filing of a EEOC complaint and employee's termination fatally dilutes causal link). Because Hawkins presents no further evidence of a causal link between her EEOC complaint and her failure to receive either Regional Manager position, the Court finds that Hawkins has not established a prima facie case of Reprisal and Count III will be dismissed.[10]

**C. Common Law Claims**

**1. Breach of Employment Contract**

Hawkins argues that Victoria breached its contract with her by failing to uphold and enforce the equal employment opportunity statement set out in its employee handbook, which promised a workplace free of discrimination. Victoria argues that no contract was formed between the parties. To establish that the handbook formed a contract altering the at-will status of her employment, Hawkins must demonstrate: 1) that Victoria communicated an offer that was definite in form to her; 2) that she accepted the offer; and 3) there was consideration. Pine River State Bank v. Mettille, 333 N.W.2d 622, 626-27 (Minn. 1982); James, 2001 WL

---

[10] Hawkins also claims that the memo she sent on January 24, 1997, in which she complained about a line of jewelry marketed to "larger and ethnic" clientele, was a protected activity. She further claims that Victoria retaliated against her by failing to notify her of various positions after she sent the memo. However, the Court is unable to decipher from the plaintiff's submissions what the specific positions were, when they were filled, or how the memo was causally related to those positions.

436121, at *11. "A promise to do something that one is already legally obligated to do does not constitute consideration." Deli v. Hasselmo, 542 N.W.2d 649, 656 (Minn. Ct. App. 1996); James, 2001 WL 436121, at *11. In this case, Title VII and the MHRA legally obligated Victoria not to discriminate against employees based on race, national origin, or color. Thus, any promise made to Hawkins to not discriminate against her was made without consideration. Id. Accordingly, the Court will dismiss Count IV.

**2. Promissory Estoppel**

Hawkins also argues that the "[d]efendant made clear and definite promises to treat her fairly" and that the "[d]efendant promised to provide a work environment free of discrimination . . .". (Hawkins Brief at 27). Hawkins claims that when she was hired, she "was promised promotional opportunities". (Hawkins Aff. at 2). She was also told that Victoria protects its employees. Victoria argues that these promises were too indefinite to form a basis for promissory estoppel.

Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact. James, 2001 WL 436121, at *11. The party seeking to invoke the doctrine of equitable or promissory estoppel has the burden of proving: (1) that promises or inducements were made; (2) that he reasonably relied upon the promises; and (3) that he will be harmed if estoppel is not applied. Heidbreder v. Carton, 645 N.W.2d 355, 371 (Minn. 2002). The Court finds that the statements Victoria made were general statements of policy and that they do not constitute an enforceable promise. James, 2001 WL 436121, at *11. The Court will therefore dismiss Count V.

**3. Intentional Infliction of Emotional Distress**

Victoria argues that Hawkins's Intentional Infliction of Emotional Distress claim is preempted by the MHRA, and that in the alternative, it fails as a matter of law. See Minn. Stat. §363.11. The MHRA preempts a common law cause of action if (1) the factual basis and injuries supporting the common law claim also would establish a violation of the MHRA, and (2) the obligations the defendant owes to the plaintiff, as a practical matter, are the same under both the common law and the MHRA. Pierce v. Rainbow Foods Group, Inc., 158 F. Supp.2d

969, 975-76 (D. Minn. 2001); Calicutt v. Pepsi Bottling Group, Inc., No. CIV 00-95DWFAJB, 2002 WL 992757, at *13 (D. Minn. May 13, 2002) (Frank, J.). But see Klaahsen v. APCOA/Standard Parking, Inc., No. CIV 02-620(RHK/AJB), 2002 WL 1397041, at *7-8 (D. Minn. June 26, 2002) (Kyle, J.). The Court finds that her claim is preempted by the MHRA.

However, even if it is not preempted, her claim fails as a matter of law. To succeed with her intentional infliction of emotional distress claim, Hawkins must show that Victoria's conduct: 1) was extreme and outrageous; 2) intentional or reckless; 3) caused severe emotional distress. Hubbard, 330 N.W.2d at 438-39. The conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community" such that "no reasonable [person] could be expected to endure it". Id. at 439. In the instant case, there is no evidence to support this claim and Count VI will be dismissed.

**4. Negligence**

Hawkins claims that Victoria negligently supervised, trained, and retained several of her supervisors, who failed to protect her rights and retaliated against her for filing her EEOC complaint. Victoria argues in response that Hawkins's negligence claim is preempted by the MHRA and that in the alternative, her claim fails as a matter of law. The Court agrees that Hawkins's claim is preempted by the MHRA. See Calicutt, 2002 WL 992757, at *13; Pierce, 158 F. Supp.2d at 975-76.

Even if the claim is not preempted, the Court finds that it fails as a matter of law. Negligent retention and hiring claims must demonstrate actual or threatened physical injury, and a negligent supervision claim requires proof of actual injury. Bruchas v. Preventative Care, Inc., 553 N.W.2d 440, 442 (Minn. Ct. App. 1996). There is no such evidence in this case and Count VII will be dismissed.

Accordingly, upon review of the files, motions, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. The defendant's motion for summary judgment as to Count I (Failure to Promote–MHRA), Count II (Age Discrimination), Count III (Reprisal), Count IV (Breach of Contract), Count V (Promissory and Equitable Estoppel), Count VI

(Intentional Infliction of Emotional Distress), and Count VII (Negligence) is **GRANTED** and those counts of the Complaint are **DISMISSED** with prejudice;

2. The defendant's motion for summary judgment is **DENIED** as to Count I (Failure to Promote–Title VII); and

3. The issues remaining for trial are limited to the two 2000 Regional Merchandising Manager positions under the plaintiff's Title VII Failure to Promote claim (Count I).

DATED: August 12, 2002.

Donald D. Alsop

DONALD D. ALSOP, Senior Judge
United States District Court